McMILLIN, C.J.,
for the Court:
¶ 1. Minnie Ross sought workers’ compensation benefits for alleged work-related injuries sustained while employed in various manual labor positions in a chicken processing plant operated by B.C. Rogers Processors, Inc. (B.C. Rogers). The Commission denied Ross’s claim to permanent disability benefits, finding that her symptoms of disabling pain were attributable to non-work-related causes including rheumatoid arthritis and the physical stresses associated with being substantially overweight. Ross appealed without success to the Circuit Court of Scott County and now asks this Court for relief. We find that, as to the limited issue of the disabling nature of Ross’s diagnosed carpal tunnel syndrome, there remain significant unanswered questions requiring that we remand the matter to the Mississippi Workers’ Compensation Commission on terms set out in more detail below.
I.
Facts
¶ 2. Ross worked for B.C. Rogers for twenty-three years in its chicken processing plant in Scott County. During that time, Ross performed a number of different jobs related to the preparation of chicken meat for the retail market. All of the positions involved repetitive motion tasks as the chicken carcasses were subjected to specific operations at the various stages of the cleaning and dressing process.
¶ 3. Ross claimed to begin experiencing difficulties in her work which caused a broad range of pain symptoms in her upper and lower extremities, shoulder, and back. The level of pain reached such an intensity that, in August 1997, Ross took a leave of absence from work and drew benefits under a disability policy in effect at her employment that was not related to workers’ compensation. Ross, despite seeking medical attention for her various complaints, never reached a level of recovery that would, in her view, permit her to return to her manual labor duties at B.C. Rogers.
*666 ¶ 4. On December 17, 1997, Ross filed a petition to controvert with the Mississippi Workers’ Compensation Commission alleging that her disabling symptoms were attributable to a work-related injury. B.C. Rogers denied that Ross’s medical complaints were traceable to the workplace, pointing out that, during the entire time Ross had been off work drawing disability insurance, she had never suggested that her pain symptoms were the result of anything that occurred during the course of her employment.
¶ 5. The Commission, acting through a duly-designated administrative judge, held a pre-hearing conference on the case on September 14, 1998. The administrative judge, as an outgrowth of that hearing, ordered an independent medical evaluation of the claimant to be performed by Dr. Rahul Vohra, a physician selected by the Commission who had not been involved in Ross’s treatment. Dr. Vohra filed a written report with the Commission. He was also subsequently deposed at the request of Ross. His written report and his deposition were both a part of the record when the administrative judge issued her opinion.
¶ 6. In that opinion, the administrative judge found (a) that Ross had failed to establish by substantial evidence that any of her debilitating conditions were traceable to an event or series of occurrences at her employment, (b) that Ross failed to prove any permanent medical impairment or limitation, and (c) that, even if a disabling workplace injury were conceded for sake of argument, Ross failed to prove any loss of wage earning capacity because of her failure to seek alternate employment after reaching maximum medical improvement.
¶ 7. On appeal by Ross to the Full Commission, the decision of the administrative judge was affirmed without further comment or modification.
II.
Discussion
¶ 8. The administrative judge, though not required to do so, exercised her discretion to order an independent medical examination of the claimant by Dr. Rahul Vohra. The order directed Dr. Vohra to report his “opinion as to what complaints of the claimant, if any, are related to her work activity with B.C. Rogers.” The order further directed that, if Dr. Vohra was of the opinion that some of Ross’s complaints were work-related, he should “provide opinions with respect to impairment ratings for [such] problems.” In order to preserve the independent nature of Dr. Vohra’s evaluation, the administrative judge limited contact with the physician by the attorneys for both parties, but provided that either party so desiring could depose Dr. Vohra after he completed his evaluation.
¶ 9. Dr. Vohra filed a written report dated October 5, 1998. In its most pertinent aspects, Dr. Vohra concluded that, as to essentially all of Ross’s complaints, he could detect no connection with her activities at work. However, the report acknowledged that there was medical evidence (derived from a previous treating physician’s medical records) that Ross, approximately a year earlier, had shown indications of suffering from a mild case of bilateral carpal tunnel syndrome. Dr. Vohra reported that, based on Ross’s history of “repetitive work for many years,” he concluded “that the carpal tunnel syndrome may very well have been aggravated by her work.”
¶ 10. Nevertheless, Dr. Vohra indicated his inability, due to problems in the examination process, to offer an opinion as to (a) *667 whether Ross continued to suffer from carpal tunnel syndrome on the date of the examination and, (b) if so, to what extent the condition affected Ross’s physical activities. Dr. Vohra stated that additional specialized testing would permit him to fully evaluate the existence and extent of any physical impairment attributable to carpal tunnel syndrome. Dr. Vohra concluded with the statement that, “If this is agreeable to the judge as well as the attorneys, please contact me and I will be glad to get this set up.”
¶ 11. Insofar as the record reveals, Dr. Vohra’s recommendation for further testing to determine the persistence and severity of Ross’s earlier diagnosis of carpal tunnel syndrome was not acted upon. The sole remaining role of Dr. Vohra in this proceeding was that he was deposed at the request of the claimant. However, a review of the transcript of that deposition reveals little more relevant information than was contained in his earlier written report. None of the other medical evidence in the record offers any further insight into the matter of Ross’s possible affliction with persistent disabling carpal tunnel syndrome.
¶ 12. As we have observed, the Commission, by adopting the findings of the administrative judge, decided to deny Ross benefits based on three essentially distinct considerations. We must, therefore, in our analysis of the issue presented to us for decision, examine each of the reasons advanced.
A.
Failure to Show Work-Related Injury
¶ 13. In reviewing a decision of the Commission, this Court is obligated to give substantial deference to those findings of fact made by the Commission. Pilate v. International Plastics Corp., 727 So.2d 771, 774 (Miss.Ct.App.1999); Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993). We do not reweigh the evidence to determine our own independent view of where the more persuasive evidence might lie; rather, if we determine that there is substantial evidence in the record to support the Commission’s fact-finding, our obligation is to affirm. Lanterman v. Roadway Exp. Inc., 608 So.2d 1340, 1345 (Miss.1992).
¶ 14. Ross, in her brief, makes broad assertions regarding the evidence, urging an interpretation that would support a conclusion that essentially all of her complaints were, to some extent, work-related. We find those assertions unpersuasive in the face of Dr. Vohra’s plainly-stated inability to find any such connection as to all of her complaints save one — that being the matter of Ross’s carpal tunnel syndrome. Thus, as to any alleged work-related disability arising out of complaints of disabling pain to the body or the lower extremities, we find substantial support in the record to affirm the Commission’s finding against compensability.
¶ 15. However, after a thorough review of the Commission’s written findings and conclusions, we are concerned that the Commission did not adequately deal with the portion of Dr. Vohra’s report that, on any reasonable interpretation, would indicate that there was some likelihood that Ross was suffering from a work-related repetitive-motion-type injury that manifested itself in the form of carpal tunnel syndrome. While Dr. Vohra’s report is not conclusive proof of a present injury, since the possibility existed that Ross’s symptoms could have disappeared in the time since her previous diagnosis, the possibility that the symptoms persisted to some degree was apparently of enough concern to Dr. Vohra for him to recommend further tests to answer the question *668 to a reasonable degree of medical certainty-
¶ 16. The Commission, unlike a judicial tribunal, does not sit as a purely deliberative body basing its decisions solely upon such evidence as the litigants elect to produce. Under Section 71-3-47 of the Mississippi Code, as amended, the Commission is given broad power to “make or cause to be made such investigation as it deems necessary” to determine questions relating to claims for compensation. Miss.Code Ann. § 71-3-47 (Rev.2000). This broad investigatory power is further reinforced by the provisions of Section 71-3-37(8), which speak to the Commission’s authority “in any case where right to compensation is controverted ... [to] make such investigations, cause such medical examinations to be made, hold such hearings, and take such further action as it considers will properly protect the rights of all parties.” Miss.Code Ann. § 71-3-37(8) (Rev.2000) (emphasis supplied). The Mississippi Supreme Court acknowledged this broad power of inquiry vested in the Commission in the case of Everitt v. Lovitt, a case where the Commission’s authority to order an independent medical examination over the claimant’s protest was upheld. Everitt v. Lovitt, 192 So.2d 422, 430 (1966).
¶ 17. In the case before us, the Commission, acting through its administrative law judge, undertook to exercise this authority when it ordered Dr. Vohra’s examination. The problem facing this Court is that Dr. Vohra’s report does not, as to possible carpal tunnel syndrome, provide the answers sought by the Commission under the previously-quoted terms of the administrative judge’s order. The report appears to be an interim one in which Dr. Vohra (a) acknowledges a somewhat dated diagnosis of carpal tunnel syndrome by another treating physician, (b) indicates that, based on Ross’s work history, the condition — if it persists — would be aggravated by the repetitive-motion aspects of Ross’s job, (c) confesses his inability to detect the continued presence of syndrome symptoms, but (d) indicates that the question can be resolved with more finality with further testing. Dr. Vohra goes so far as to indicate his willingness to pursue the further testing, subject to the approval of the administrative judge and the attorneys. It is not clear from the record why Dr. Vohra felt compelled to stop short of ordering the additional testing on his own initiative under the broad mandate of the administrative judge’s order. Perhaps there were issues of cost for these additional test procedures, or perhaps he was simply unsure as to what lengths he could go on his own devices in an effort to arrive at the findings requested in the administrative judge’s order and was in search of a clearer definition of his authority.
¶ 18. In all events, no further direction was given to Dr. Vohra by the administrative judge, and there is nothing in this record that explains why, having first determined to obtain Dr. Vohra’s view of the source of Ross’s maladies and the degree of impairment attributable to any such maladies found to be work-related, the Commission elected, by its silence, to end Dr. Vohra’s involvement when the goal was not reached but appeared to be in sight.
¶ 19. In acknowledging the broad discretionary powers of the Commission to investigate the right of a claimant to compensation, this Court must of necessity concede the Commission’s discretion to abandon any such inquiries once begun. It is, after all, the claimant who has the burden under the law of proving the com-pensable nature of her injury.
*669 ¶ 20. There is the added consideration that it is a basic axiom of appellate review that a lower tribunal will not be put in error for some matter upon which it was not offered the opportunity to rule. Triplett v. Mayor and Bd. of Aldermen of City of Vicksburg, 758 So.2d 399(¶ 9) (Miss.2000). In this case, the claimant, having had the benefit of Dr. Vohra’s report that left the matter of the possible disabling carpal tunnel syndrome medically unresolved, nevertheless did not seek to persuade the administrative judge to supplement her order to direct Dr. Vohra to do the additional testing that would have resolved the matter with some degree of medical certainty. Neither did the claimant, once made aware of the possibility that medical evidence existed to establish the compensable nature of her upper extremities complaints, undertake to independently gather the necessary evidence to prove such a claim.
¶ 21. Despite these considerations, we find our review of the case at this stage to be rendered most difficult by the lack of explanation as to why an avenue of inquiry, commenced by the Commission itself and having the potential to disclose a com-pensable injury, was abruptly abandoned. While, as we have already observed, we concede the Commission’s discretion to abandon its own independent investigation of the matter once begun, we are satisfied that any such decision affecting the conduct of the proceeding must be subject to judicial review under an abuse of discretion standard. Douglas and Lomason Co. v. Freeman, 590 So.2d 124, 128 (Miss.1991). It is, thus, the absence of any explanation for why Dr. Vohra was not authorized to continue his examination along the avenue he recommended that prevents us from affirming this decision.
¶ 22. Nevertheless, it may be the ease that there exists a reasonable explanation for why the Commission’s own investigation through Dr. Vohra was stopped short of the mark. Both this Court and the Mississippi Supreme Court follow a practice, where appropriate, of remanding a matter to the lower tribunal for the limited purpose of making findings of fact to explain a particular ruling during the course of the proceeding. See, e.g., Fisher v. Fisher, 771 So.2d 364(¶ 16)(Miss.2000); Brown v. Bond, 768 So.2d 347(¶4) (Miss.Ct.App.2000). We determine that a similar procedure would be appropriate in this case (assuming for the moment that the matter may not be finally affirmed or reversed on either of the two remaining grounds for decision offered by the Commission, which we have yet to consider in this opinion).
¶ 23. As to this issue on appeal, therefore, we deem it appropriate to remand this matter temporarily with direction to the Commission to issue supplemental findings as to why the Commission ceased efforts to obtain an evaluation from Dr. Vohra at a point short of the original objective when the doctor had indicated that he could complete his mission if he could subject the claimant to further testing. Those findings should be certified to the Clerk of this Court within forty-five days from the date this opinion is handed down, at which time the Court will proceed to consider the matter further. However, in the event the Commission, in formulating its findings, should determine that the better course would be to exercise its discretion to permit Dr. Vohra to perform the test procedures identified in his interim report, then, upon certification of that finding to the Clerk of this Court, this matter shall be deemed to have been finally remanded to the Commission for such further proceedings relating to compensability as would appear appropriate based on *670 the medical evidence derived from the subsequent medical testing and evaluation.
B.
Lack of Evidence of Medical Impairment
¶ 24. As an alternate ground to deny compensation, the Commission determined that the claimant did not “prove, to a reasonable degree of medical probability, that she has sustained a permanent medical impairment, medical limitations or restrictions.”
¶ 25. While this finding, on the present state of the record, is accurate, the situation is subject to change depending on the resolution of the issue of whether Dr. Voh-ra will be given the opportunity to further explore the existence and extent of Ross’s previously-existing carpal tunnel syndrome. For that reason, this Court cannot properly address this ground at this time except to observe that, because there is the potential that additional evidence may be received, it cannot constitute an independent basis to affirm the Commission’s present decision.
C.
Loss of Wage Earning Capacity
¶ 26. The third reason advanced by the Commission to deny Ross’s compensation claim was that she had failed to demonstrate a loss of wage earning capacity. In several prior cases before this Court, carpal tunnel syndrome was considered by the treating physician as causing a medical disability to the arm and there is no indication that any entity involved in the claim procedures took issue with this proposition. See, e.g., McCarty Farms, Inc. v. Banks, 773, So.2d 380 (Miss.Ct.App.2000). In the case of injuries to scheduled members such as the arm, disability may be based upon a proven permanent medical impairment without consideration of the effect of that impairment on wage earning ability. Smith v. Jackson Const. Co., 607 So.2d 1119, 1128 (Miss.1992).
¶ 27. While a finding that the claimant failed to establish a loss of wage-earning capacity would provide an independent ground to affirm as to Ross’s complaints relating to the body as a whole, we have determined that the possibility still exists that Ross may be able to prove a work-related permanent impairment to one or both of her upper extremities. As to that limited avenue of inquiry- — the only one left open by this opinion — this alternate basis offered to deny compensation would not apply.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY IS REVERSED AND REMANDED TO THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO APPELLEE.
KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.